**IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT
OF TEXAS SHERMAN DIVISION**

| | |
|---|---|
| **In Re: Rare Breed Triggers Patent Litigation** | 4:26-md-03176-ALM<br>MDL 3176 |
| **ABC IP, LLC,** *et al.*,<br><br>  **Plaintiffs,**<br><br>  **v.**<br><br>**80MILLS LLC, d/b/a TACTICAL TITAN SUPPLY,** *et al.*,<br><br>  **Defendants.** | Civil Action No. 4:26-cv-00380-ALM |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT

80Mills LLC, d/b/a Tactical Titan Supply ("80Mills") and Pearson Gardner ("Gardner")(collectively, "Defendants"), respectfully oppose ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") Motion for Leave to File Fourth Amended Complaint. Plaintiffs' motion should be denied. In the alternative, any leave should be conditioned on an order prohibiting Plaintiffs from adding any further patents to this case, absent good cause. Plaintiffs' motion is not a routine request to correct a pleading defect or add newly discovered facts. It is another attempt in a growing pattern of serial amendments in this MDL. This pattern will not end absent court intervention. Plaintiffs' assertion that the patents concern the same accused product does not eliminate prejudice. The Court should deny leave.

## I.      BACKGROUND

Plaintiffs initiated this action on June 17, 2025, asserting only U.S. Patent No. 12,038,247 ("the '247 Patent"). Plaintiffs then filed a First Amended Complaint for Patent Infringement on July 2, 2025, (Dkt. #6), before Defendants had answered the original complaint. On November 20, 2025, the Court entered a Case Management Plan and Scheduling Order, Dkt. #22, which set deadlines related to the claim-construction phase of the case but did not set a deadline to amend the pleadings.

After filing suit, Plaintiffs determined that the accused Super Safety device allegedly infringed U.S. Patent No. 12,031,784, ("the '784 Patent"), owned by ABC and licensed by Rare Breed. Plaintiffs informed Defendants that they intended to assert the '784 Patent and sought Defendants' consent to amend. Defendants declined. Plaintiffs then filed a Motion for Leave to Amend on January 16, 2026. Dkt. #24. The Court granted Plaintiffs' motion on February 3, 2026. Dkt. #25.

Plaintiffs' amendment efforts did not stop there. After Plaintiffs filed their first motion to amend, two more patents issued. U.S. Patent No. 12,529,538, ("the '538 Patent"), issued on January 20, 2026, and U.S. Patent No. 12,578,159, ("the '159 Patent"), issued on March 17, 2026. Plaintiffs then notified Defendants' counsel that they intended to assert those patents and sought Defendants' consent to amend again. During a meet-and-confer on March 18, 2026, Defendants declined to consent. Plaintiffs moved to add the '538 and '159 Patents on March 24, 2026.

Meanwhile, Defendants and other defendants in related litigation moved to consolidate the related cases into MDL 3176. MDL 3176, Dkt. #1. While the JPML considered that motion, the parties agreed to stay this case. Dkt. #28. The case was then transferred into MDL 3176 on April

14, 2026. Dkt. #37. Under Local Rule CV-7(j), that transfer mooted Plaintiffs' pending motion for leave to amend.

Plaintiffs now seek to expand the case again based on another newly issued patent. On May 26, 2026, U.S. Patent No. 12,636,403, ("the '403 Patent"), issued. Plaintiffs allege that ABC IP, LLC is the current owner by assignment of all right, title, and interest in the '403 Patent and that Rare Breed is the exclusive licensee of the '403 Patent. Plaintiffs seek to assert the '403 Patent.

Lastly, on May 29, 2026, Plaintiffs filed the Consolidated Motion for Preliminary Injunction on the Court's MDL docket—rather than in the individual member cases—asserting five patents (including the '403 Patent) against thirteen defendant groups. (MDL 3176, Dkt. #7) Plaintiffs also sought expedited discovery, oversized briefing, and sealing. (MDL 3176, Dkt. #7; Dkt. #11).

Thus, what began as a single-patent case concerning only the '247 Patent and Defendants' Super Safety device has become Plaintiffs' repeated effort to expand the litigation by adding additional patents as Plaintiffs continue evaluating their patent portfolio and as additional patents issue.

## II.    <u>LEGAL STANDARD</u>

Rule 15(a)(2) provides that, after the time to amend as of right expires, a party may amend only with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). The court should freely give leave when justice so requires. *Id*. A court may deny leave for undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by prior amendments, undue prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003); *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). The Fifth Circuit likewise recognizes that leave may be denied where there is a "substantial reason" to do

so. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981). Undue prejudice exists where amendment would require the opponent to expend significant additional resources, alter litigation strategy, or expand the case in a way that disrupts orderly preparation. See *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427–28 (5th Cir. 2004) (affirming denial of leave where amendment "would fundamentally alter the nature of the case").

Where amendment requires modification of a scheduling order or case-management deadlines, Rule 16(b)(4) requires good cause. *S&W Enterprises, L.L.C. v. SouthTrust Bank of Ala.*, NA, 315 F.3d 533, 535-36 (5th Cir. 2003). The Fifth Circuit considers: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. at 536. "Merely proffering an explanation is not enough"; the explanation must be adequate. *Banks v. Spence*, 114 F.4th 369, 372 (5th Cir. 2024).

III.    **ARGUMENT**

A.      **Plaintiffs' Serial Amendments Have Made This Case a Moving Target, and the Court Should Not Permit Yet Another Amendment to Add the '403 Patent.**

This case began as a one-patent case. Plaintiffs have since filed four amended complaints, adding patents. The sequence is this:

- Original Complaint: 1 patent — the '247 Patent (*See* Dkt. #38 at p. 2);

- First Amended Complaint;

- Second Amended Complaint: Added the '784 Patent (*Id*.);

- Third Amended Complaint: Added 3 Patents: the '538 Patent, '159 Patent, U.S. Patent No. 12,274,807 (*Id*. at pp. 2-3); and

- Proposed Fourth Amended Complaint: seeks to add the '403 Patent, pushing this case yet again into a new posture (*Id*. at p. 3).

4

The problem is not limited to this individual member case. In related cases within this MDL, Plaintiffs have pursued serial amendments to an even greater extent, with some cases reaching as many as six amended complaints. *ABC IP LLC et al v. DNT LLC*, Case No. 26-cv-00377, Dkt. #42. This is not ordinary pleading refinement. It is a litigation strategy under which Plaintiffs file suit on one patent, continue prosecuting related patent applications, and then ask to expand the pleadings whenever another patent issues.

At some point, the pleadings must close. Defendants are entitled to know the case they must defend. The Court is entitled to manage a stable MDL. Plaintiffs should not be permitted to convert this litigation into an open-ended vehicle for asserting whatever patents issue next. Unless the Court draws a firm line, Plaintiffs will continue adding patents throughout these cases, prolonging the litigation and repeatedly forcing Defendants to restart major portions of their defense.

**B.**    **Adding the '403 Patent Would Substantially Prejudice Defendants Because Each Newly Added Patent Essentially Starts the Case Over.**

The '403 Patent is not a minor factual detail. Plaintiffs seek to add an entirely new patent, an entirely new infringement count, new asserted claims and limitations, new direct infringement allegations, new willfulness allegations, and new requests for damages. (Dkt. #39 ¶¶ 91-104). Plaintiffs' proposed pleading includes a separate claim chart for claim 38 of the '403 Patent. *Id*. ¶ 94. That chart alone confirms that the '403 Patent will require a separate infringement and noninfringement analysis.

Every time Plaintiffs add another patent, Defendants must start over in all material respects. Defendants must analyze new asserted claims, new file history, new priority issues, new claim-construction issues, new infringement theories, new noninfringement defenses, new invalidity

defenses, new prior-art searches, and new damages issues. Adding the '403 Patent therefore does not merely add a paragraph to the complaint. It triggers an entire new patent-contention cycle.

This undue prejudice is not cured by the fact that the accused product may be the same. Different patents have different claim limitations, which require different evidence and different defenses. Plaintiffs' "same product" argument would allow endless amendments in any continuation-patent case, because a plaintiff could always say each later-issued continuation patent is directed to the same accused product. Rule 15 does not require that result.

Plaintiffs did not wait for the Court to decide whether the '403 Patent belongs in this case. After filing the Third Motion for Leave, Plaintiffs filed a consolidated PI motion asserting the '403 Patent anyway. That sequence supplies a new and significant reason to deny or defer amendment. Plaintiffs' choice to file the PI motion first and seek to cure the pleading problem later is not a reason to accelerate amendment; it is a reason to deny leave without prejudice.

The Court need not find subjective bad faith to deny or defer leave. The relevant point is that Plaintiffs' filing conduct confirms that the amendment is being used strategically to create more work for the Defendant. That is a proper consideration under Rule 15's prejudice, bad-faith/dilatory-motive, and case-management analysis.

### C.    Pre-established Scheduling Order and MDL Efficiency Would Be Defeated by Plaintiffs' Serial Patent Additions.

Due to the pre-existing scheduling order set on November 20, 2025 (Dkt. #22), Plaintiffs therefore must show good cause under Rule 16(b)(4), not merely invoke Rule 15's liberal amendment standard. They have not done so. Plaintiffs' request would require reopening and restructuring the case around a new patent. That is precisely the type of disruption Rule 16 is designed to prevent.

Plaintiffs' request to add the '403 Patent is not a one-off amendment—it is the latest step in a deliberate, rolling patent-family strategy that threatens to keep this litigation in perpetual motion. Plaintiffs admit that after filing suit they "continued to evaluate" the same accused device against additional patents, then moved to add the '784 Patent, then the newly issued '538 and '159 Patents, and now the '403 Patent. (Dkt. 38 at pp. 2–3). Nothing in Plaintiffs' approach supplies a stopping point. Plaintiffs have pending patent applications in the numerous patent families. (Declaration of John M. Skeriotis, ¶¶2, 3, attached herein as Exhibit 1). If leave is granted here, the next continuation that issues will predictably generate the next motion, and then the next, turning this lawsuit into an ever-expanding portfolio assertion.

That is precisely the prejudice. Plaintiffs argue any harm can be "cured" by adjusting the schedule, but schedule adjustment is the harm. This case already has (and has already required revisiting) a Case Management Plan and Scheduling Order, and Plaintiffs now seek to use the MDL posture as an opportunity to expand the case yet again. (Dkt. #38 at pp. 2–5). Each new patent forces the parties, and the Court, to redo core work: infringement and invalidity contentions, claim construction, fact and expert discovery, dispositive motions, and trial preparation.

The problem is even more acute in an MDL, where centralization is meant to promote orderly, efficient management. Serial amendments defeat that purpose by preventing the MDL from progressing through common discovery and coordinated claim construction on a stable set of asserted rights. Plaintiffs chose to file before their patent families matured; they should not be permitted to shift the consequences of that choice to Defendants and the MDL by repeatedly expanding the case whenever another patent issues. Judicial economy requires finality: a stable set of claims, defenses, and deadlines. The Court should deny leave to add the '403 Patent to prevent an endless cycle of amendment, delay, and duplicated work.

## CONCLUSION

For all the above reasons, Defendants respectfully request that the Court deny this Motion for Leave to File the proposed Third Amended Complaint and grant Defendants any other relief deemed just and proper. In the alternative, any leave should be conditioned on a firm order prohibiting Plaintiffs from adding any further patents to this case, absent extraordinary good cause.

Sincerely,

**EMERSON, THOMSON & BENNETT, LLC**

*/s/John M. Skeriotis*
John M. Skeriotis (Ohio Bar No. 0069263)
1914 Akron-Peninsula Rd.
Akron, Ohio 44313
(330) 434-9999
(330) 434-8888 Facsimile
E-mail: jms@etblaw.com
*One of the Attorneys for Defendants 80Mills, LLC and Pearson Gardner*

8